UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN ALLOYS CORP.,
a Michigan corporation,

        Plaintiff,

                                    Case No. 05-CV-74695

vs.                                    HON. GEORGE CARAM STEEH

STATE METALS INDUSTRIES, INC.,
a New Jersey corporation,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE (#2)

     Defendant State Metals Industries, Inc. ("SMI") moves to dismiss for insufficiency of service of process and lack of personal jurisdiction. SMI also moves to transfer venue to New Jersey for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a). A hearing on the motions was held on February 9, 2006.

### I. Background

     Plaintiff Metropolitan Alloys Corporation ("MAC"), a Michigan corporation, filed a complaint in Michigan's Wayne County Circuit Court on September 1, 2005 alleging MAC contracted with defendant SMI, a New Jersey corporation, in February 2004 to purchase metal materials including unplated zinc die casts and aluminum wire. MAC allegedly received the materials from SMI on February 14, 2004, and initial sample inspections revealed no contaminants. MAC alleges, however, that contaminated materials were

concealed by SMI in lower levels of the shipping containers.  MAC alleges it unknowingly used these contaminated materials to create zinc and zinc-aluminum alloys, which were then sold to non-party Empire Die Casting Company ("Empire"), an Ohio company.  Empire allegedly made die castings from the materials, which later cracked due to contaminants. Empire has since allegedly claimed damages against MAC of over $150,000.00.

Based on these factual allegations, MAC alleges SMI is liable under Michigan's version of Article 2 of the Uniform Commercial Code ("UCC") for breach of contract, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and fraud.  The lawsuit was removed to federal court on December 9, 2005 based on the court's diversity jurisdiction.  See 28 U.S.C. §§ 1332, 1441, 1446.  SMI alleges in the Notice of Removal that service of process did not meet the requirements of either the Federal or Michigan Civil Rules of Procedure.

## II. Dismiss for Insufficiency of Service of Process

Federal Rule of Civil Procedure 12(b)(5) authorizes a district court to dismiss a complaint for insufficiency of service of process.  The party on whose behalf service of process was made has the burden of establishing its validity.  Shires v. Magnavox Co., 74 F.R.D. 373, 377 (E.D. Tenn. 1977).  In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service.  Thompson v. Kerr, 555 F.Supp. 1090, 1093 (S.D. Ohio 1982).  Facts as attested to in uncontroverted affidavits may be considered in ruling on a motion to dismiss under Rule 12(b)(5).  See Shires, 74 F.R.D. at 376-377 (reasoning that uncontroverted facts in affidavits are deemed admitted for purposes of deciding a motion to dismiss for insufficiency of service of process)).

2

SMI argues without factual support that MAC attempted service simply by giving a brown envelop to an unknown person standing at an SMI truck scale on October 13, 2005, and by sending a copy of the summons and complaint by certified mail to SMI's main corporate office.  MAC has responded with affidavits demonstrating that it complied with the service of process requirements of Michigan Court Rule 2.105(D)(2)[1] when process server Susan Sommer hand delivered a copy of the summons and complaint to a person representing themselves to be in charge of SMI's office on September 14, 2005, and by sending by certified mail a copy of the summons and complaint to SMI's corporate office on November 9, 2005.  Federal Rules of Civil Procedure 4(e) and (h) permit service upon a corporation pursuant to state law.  Based on MAC's uncontested affidavits, MAC has met its burden of demonstrating the validity of service of process upon SMI.  Shires, 74 F.R.D. at 376-377; Thompson, 555 F.Supp. at 1093.  SMI's motion to dismiss for insufficient service of process will be denied.

### III. Dismiss for Lack of Personal Jurisdiction or
### Transfer Venue to New Jersey

"It is a well-accepted principle that a federal court in a diversity case must apply the conflict of law rules of the state in which it sits." Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 361 (6th Cir. 1993) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) and Colonial Refrigerated Transp., Inc. v. Worsham, 705 F.2d 821, 825 (6th Cir.1983)).  SMI's motion to dismiss for lack of personal jurisdiction is premised on a

---

[1] "Service of process on a domestic or foreign corporation may be made by . . . (2) serving a summons and a copy of the complaint on a . . . person in charge of an office or business establishment of the corporation and sending a summons and a copy of the complaint by registered mail, addressed to the principal office of the corporation[.]" M.C.R. 2.105(D)(2).

contractual forum selection clause and a Michigan rule codified at M.C.L. § 600.745:

> (3) If the parties agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court shall dismiss or stay the action, as appropriate, unless any of the following occur:
>
> (a) The court is required by statute to entertain the action.
>
> (b) The plaintiff cannot secure effective relief in the other state for reasons other than delay in bringing the action.
>
> (c) The other state would be a substantially less convenient place for the trial of the action than this state.
>
> (d) The agreement as to the place of the action is obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
>
> (e) It would for some other reason be unfair or unreasonable to enforce the agreement.

M.C.L. § 600.745(3).  SMI's motion to transfer venue under 28 U.S.C. § 1404(a) is likewise premised on a contractual forum selection clause.  See Moses v. Business Card Express, Inc., 929 F.2d 1131, 1136 (6th Cir. 1991) (recognizing that a forum selection clause is a "significant factor" that figures "centrally" in a district court's analysis of whether to transfer venue under 28 U.S.C. § 1404(a)).  Indeed, SMI's motion to transfer venue relies almost exclusively on the forum selection clause at issue here.[2]

The question presented by SMI's motions is whether MAC is bound by the following

---

[2]  SMI's argument that New Jersey's general public interest in protecting New Jersey sellers outweighs Michigan's public interest in protecting Michigan buyers is not well taken. Neither is the court persuaded that docket congestion favors a transfer of venue to New Jersey.  Other factors outlined in Grand Kensington, L.L.C. v. Burger King Corp., 81 F.Supp.2d 834, 836 (E.D. Mich. 2000) admittedly do not favor either venue.  Transfer under § 1404(a) is not appropriate if it simply transfers inconvenience of the forum from one party to another.  See Evans v. Tempcon, Inc., 778 F.Supp.371, 377 (W.D. Mich. 1990).

forum selection clause set forth on the reverse side of an SMI "Sales Contract":

> **2. ACCEPTANCE OF ORDER:** Acceptance of delivery of any or part of this order shall constitute acceptance by Buyer of this order upon the terms, conditions and prices set forth herein.
>
> *        *        *
>
> **10. LAW:** Buyer agrees that any dispute arising out of this agreement shall be resolved in the Superior Court of New Jersey, Camden County, or the Federal District Court for the District of New Jersey and buyer does agree to submit generally to the jurisdiction of these courts.

Plaintiff MAC's Exhibit 2. MAC argues it is not bound by the New Jersey forum selection clause because, as attested to by MAC Executive Vice President Gilbert Spilman, he never discussed nor agreed to the provision when placing a phone order for the subject materials with SMI's Andy Dorfman, nor was such a provision referred to in the "Purchase Order" MAC mailed to SMI on February 16, 2004. See Plaintiff MAC's Exhibit 1. No MAC representative signed the "Sales Contract." MAC argues that, pursuant to M.C.L. § 440.2207(2)(b) of the UCC, the forum selection clause is a material alteration of the parties' contract and thus did not become a part of the contract as a matter of law.

Michigan courts recognize that "[a] contractual forum selection clause, though otherwise valid, may not be enforced against one not bound by the contract." Offerdahl v. Silverstein, 224 Mich. App. 417, 420, 569 N.W.2d 834 (1997). It is for Michigan courts to determine in the first instance whether a forum selection clause is contractually binding. Id. at 419 (referring generally to M.C.L. § 600.745). M.C.L. § 440.2207 provides in pertinent part:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on

5

assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) *they materially alter it*; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

M.C.L. § 440.2207(1-2) (emphasis added).  SMI does not dispute that the New Jersey forum selection clause  first appeared in the "Sales Contract" SMI mailed to MAC in response to Spilman's phone order and MAC's February 16, 2004 "Purchase Order."  It is also undisputed that the parties are "merchants."  The dispositive issue is therefore whether the New Jersey forum selection clause added to the back of SMI's "Sales Contract" materially altered the parties' contract, or became a part of the contract.  M.C.L. § 440.2207(2)(b).  The question is one of Michigan state law.

> In construing questions of state law, the federal court must apply state law in accordance with the controlling decisions of the highest court of the state. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue. The Court may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the "majority" rule in making this determination. Grantham & Mann v. American Safety Prods., 831 F.2d 596, 608 (6th Cir.1987).

Meridian Mutual Ins. Co. v. Kellman, 197 F.3d 1178, 1181 (6th Cir. 1999).

Neither the Michigan Supreme Court nor the Michigan Court of Appeals have decided the precise issue of whether adding a forum selection clause constitutes a material alteration of a UCC sales contract for purposes of M.C.L. § 440.2207(2)(b).  Consistent with

6

a policy that the UCC be construed "to make uniform the law among various jurisdictions," Michigan courts have found it appropriate to seek guidance from the decisions of other jurisdictions in addressing materiality issues arising under M.C.L. § 440.2207(2)(b).  See Power Press Sales Co. v. MSI Battle Creek Stamping, 238 Mich. App. 173, 604 N.W.2d 772 (2000) (relying on Alaska law in finding that added indemnity clause constituted a material alteration after quoting M.C.L. § 440.1102(2)(c) and citing Shurlow v. Bonthuis, 456 Mich. 730, 737-738, 576 N.W.2d 159 (1998)).  One Michigan appellate court succinctly stated the purpose of M.C.L. § 440.2207:

> Section 2207 proceeds on the assumption that businessmen frequently reach firm oral understandings not instantly reduced to writing and signed; that it is commonplace for one or both to confirm such understandings in writing; that not infrequently the writings differ but the parties, nevertheless, commence performance, impelled to do so by the exigencies of the business world.  The policy of section 2207 is that the parties should be able to enforce their agreement, whatever it is, despite discrepancies between the oral agreement and the confirmation (or between an offer and acceptance) if enforcement can be granted without requiring either party to be bound to a material term to which he has not agreed.

American Parts Co., Inc. v. American Arbitration Association, 8 Mich. App. 156, 167, 172 n.10, 154 N.W.2d 5 (1968) (quoting in the footnote Application of Doughboy Industries, Inc., 17 A.D.2d 216, 233 N.Y.S.2d 488 (1962) as stating: "In the light of the New York cases, at least, there can be little question that an agreement to arbitrate is a material term, one not to be injected by implication, subtlety, or inveiglement").

A leading authority on contracts states "clauses which have been deemed to materially alter a contract include a choice of forum clause . . . ." 2 Williston on Contracts, § 6:22, at 6 (4th ed.) (Dec. 2005 update).  While relatively few decisions have been rendered on the issue, see id. at 6 n.14, General Instrument Corp. v. Tie Manufacturing,

Inc., 517 F.Supp. 1231 (S.D.N.Y. 1981), holding that the addition of a forum selection clause constitutes a material alteration of a contract for purposes of New York's version of UCC 2-207, has been frequently cited with approval.  See Dale Horning Co., Inc. v. Falconer Glass Industries, 710 F.Supp. 693, 699 (S.D. Ind. 1989) (interpreting Indiana law); Product Components, Inc. v. Regency Door and Hardware, Inc., 568 F.Supp. 651, 653 (S.D. Ind. 1983) (same); One Step Up, Ltd. v. KMart Corp., No. 97 Civ. 1469, 1997 WL 391117, at *2 (S.D.N.Y. July 11, 1997) (unpublished) (interpreting New York law); M.K.C. Equipment Co. v. M.A.I.L. Code, Inc., 843 F.Supp. 679, 686 (D. Kan. 1994) (interpreting Kansas and Indiana law); TRWL Financial Establishment v. Select International, Inc., 527 N.W.2d 573, 580 (1995) (interpreting Minnesota law).  SMI has not proffered, and the court has not found, decisions holding to the contrary.

> In Marlene [Industries Corp. v. Carnac Textiles, Inc., 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978)] the clause objected to proposed that the parties give up their access to the courts of any state, and proceed before a private arbitration tribunal. In this case, the clause proposes that defendant is required to give up the right it would otherwise enjoy, to be sued where it is doing business, or in the state of its principal office, and consent to be sued in an adjoining state. A reasonable merchant would probably regard this as a material alteration.

> There are still subtle differences between the courts in various states. Certainly the jurors are selected from different economic, political and social backgrounds, which may affect their attitudes even in commercial matters. Counsel other than the party's regular attorney may be needed, at additional expense. The bench and bar has always regarded choice of forum as a significant right. The Court, as a matter of common sense would regard the injection of a choice of forum clause as a proposal for a material alteration in the contract, and believes that while the argument is not as strong as in the case of an arbitration clause, the rationale is the same.

General Instrument, 517 F.Supp. at 1235.

Consistent with Michigan policy of construing the UCC uniformly among the various

jurisdictions, and the acceptance of the reasoning in <u>General Instrument</u> among various jurisdictions, this court is persuaded that, if faced with the issue, the Michigan Supreme Court would rule that a unilateral addition of a forum selection clause to a contract governed by the UCC is a material alteration of the contract that does not become a part of the contract by operation of M.C.L. 440.2207(2)(b). <u>Meridian Mutual</u>, 197 F.3d at 1181. The <u>General Instrument</u> court's analogy to arbitration clauses is particularly persuasive in light of Michigan law holding that the addition of an arbitration clause constitutes a material alteration of an Article 2 UCC contract. <u>See</u> <u>American Parts Co.</u>, 8 Mich. App. at 167, 172. SMI's request for limited discovery as to whether MAC simply read the forum selection clause is unavailing.

> . . .  Surely a party who has entered into an agreement cannot change that agreement by the simple expedient of sending a written 'confirmation' containing different or additional terms including an additional 'conditional assent' term providing that the other contracting party, by performing the previously agreed upon terms, agrees to all the unagreed upon additional or different terms.

<u>American Parts Co.</u>, 8 Mich. App. at 174.  Merely accepting delivery and reading the "Sales Contract" language would not bind MAC to all of the "terms, conditions, and prices set forth herein."  See Section 2 of "Sales Contract," Plaintiff MAC's Exhibit 2, at 2.

In that the New Jersey forum selection clause set forth in SMI's "Sales Contract" did not become a part of the parties' contract by operation of M.C.L. § 440.2207(2)(b), M.C.L. § 600.745(3) is inapplicable because the forum selection clause is not binding upon MAC. <u>Offerdahl</u>, 224 Mich. App. at 419-420.  SMI's argument for a transfer of venue under § 1404(a) premised on the forum selection clause is likewise without merit.  SMI's motion to dismiss for lack of personal jurisdiction and to transfer venue pursuant to § 1404(a) will be

denied.

## IV. Conclusion

For the reasons set forth above, defendant SMI's motion to dismiss for insufficiency of service of process and lack of personal jurisdiction is hereby DENIED.  SMI's motion to transfer venue to New Jersey pursuant to 28 U.S.C. § 1404(a) is also hereby DENIED.

SO ORDERED.


s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  February 22, 2006


CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on February 22, 2006, by electronic and/or ordinary mail.


s/Josephine Chaffee
Secretary/Deputy Clerk

10